KING *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

Where, in an action against a railway company for personal injuries occasioned by falling into a railroad-cut at night from a public street immediately adjacent to and running parallel with the cut, the only thing alleged against the defendant as negligence is its failure to place a guard-rail or light at the place in question, it not being one to which sections 2220 and 2221 of the Civil Code are applicable, or one at which, under the facts alleged, the company, relatively to the plaintiff, was under a duty of erecting a guard-rail or placing a light, there is no error in sustaining a demurrer to the plaintiff's petition.

Argued May 9, — Decided June 1, 1899.

Action for damages. Before Judge Hart. Wilkinson superior court. April term, 1898.

*Mercer & Mercer* and *F. Chambers*, for plaintiff.
*Lawton & Cunningham*, for defendant.

LITTLE, J. The plaintiff in error instituted an action against the Central of Georgia Railway Company, to recover damages for personal injuries, making substantially the following allegations: He became a passenger on the train of the defendant at Milledgeville, for the purpose of being carried to Savannah, Georgia, and arrived at Gordon, a station on defendant's railroad, in the evening, and having to remain over until 12.15 the next day in order to take the train for Savannah, he went to a hotel in the town of Gordon. After night, desiring to go to a particular store in the town, he made enquiries as to the route, and was directed by a gentleman at the hotel to go to the warehouse across the railroad-tracks of the defendant, from where he could easily reach the store which he sought; that at the warehouse there was a light. Acting on this information, he started in the direction of the warehouse, expecting to cross the railroad-track, and not knowing that the track was in a cut, nor of the existence of a brick wall abutting the street, but before reaching the track he unknowingly and without fault or negligence on his part stepped from a brick wall about five or six feet in height, falling that distance to the ground below, in which were the tracks of the railroad company. The fall occasioned him serious and permanent injuries. At the point on the right of way of the defendant, where the injury was received, the tracks are in a cut, on the northern side of which was built a brick wall extending along a public street which ran parallel with the right of way for several hundred feet, the top of which was on a level with the street in front of the hotel from where petitioner started. Immediately in front of the hotel, and just at the street, steps were built by the defendant for the use of the public for the purpose of ingress and egress to and from the railroad-tracks and warehouse, and this was the usual route traveled by pedestrians. Petitioner did not know of the existence of these steps, nor of the brick wall, and

supposed that the ground was level from the hotel to the warehouse, and believed that he was traveling the usual route taken by persons in going from the hotel to the warehouse. The night was very dark, and he did not discover the wall from which he fell until he had stepped over it. He alleges that the erection and maintenance of the wall and of the steps, without protecting the same by a guard or railing or light at night, was gross negligence, and that the injury to plaintiff was the result of gross carelessness and negligence on the part of defendant. He alleges that he was injured without any fault or negligence of his own; that he in nowise contributed to the injury, but that the same was caused entirely by the negligence of the defendant in failing to provide suitable guard-rails or lights by which he would have been able to discover the wall and cut. He then fully sets out the details of his injury, and alleges his damages to be the sum of five thousand dollars. Subsequently plaintiff amended his petition by alleging that his injuries occurred without fault on his part, but that the same were caused entirely by the negligence of the defendant in building, maintaining, and holding out for the use of pedestrians the said steps or approach to and through its right of way, and in failing to provide suitable guard-rails at the point where the said steps enter the cut, extending a few yards on each side of the steps, which would have prevented petitioner from falling; that the defendant was further guilty of carelessness and negligence in not providing lights at the point where the steps enter the cut, by which he would have been able to have seen the steps and have avoided falling over the wall. He further shows that he was a stranger in the town and unacquainted with the topography of the land; that he was bona fide and honestly following the walk or roadway pointed out to him, and keeping in said walk or roadway as best he could; it was after dark and he could not see clearly, and the fact that the walk led directly to the steps caused him to believe that he was in a safe place, and the fact that the walk terminated abruptly at the steps would have been made evident to him had there been a light there, or a guard-rail at the end of the walk or roadway to keep him from going over said wall.

To this petition the defendant filed a general demurrer, which on the hearing was sustained, and the petition dismissed. To the judgment sustaining the demurrer plaintiff in error excepted. Fairly construed, the petition seeks to recover because the defendant did not erect guard-rails along the cut within which its railroad-tracks were placed, and did not exhibit lights so that the steps, which had been placed conveniently for ingress and egress to the right of way and warehouse of the defendant company, might be seen by persons desiring to use the same.

In order to determine whether the petition sets forth a cause of action against the defendant, it is necessary to ascertain whether the defendant owed any duty to the plaintiff under the allegations set forth; for, in the absence of an obligation to perform any duty to the plaintiff, no negligence on the part of the defendant could exist of which the plaintiff had a right to complain. It can not be said that the defendant owed any duty to the plaintiff as a passenger, under the allegations which he makes. It is true that the plaintiff went into the car of the defendant at the city of Milledgeville to be carried to Savannah, and while at the station and on the car of the defendant for the purpose of being so transported the relation of carrier and passenger existed. But on arrival at the town of Gordon, where the passenger had to remain several hours in order to make connection with the train for Savannah, he was safely delivered at the station in Gordon, and voluntarily left the premises of the railroad company and went to the hotel to be entertained; and it could hardly be claimed, until he again entered the car for the purpose of being carried to Savannah, or at least came upon the premises of the defendant for the purpose of boarding the car, that he could be considered as a passenger. If it were the purpose of the plaintiff to hold the defendant company responsible for his safety as a passenger, he should have remained at the station where he could have been looked after by the officers or agents of the company. By voluntarily leaving its premises, he, at least for the time being, severed the relation of carrier and passenger which prior to that time had existed between them.

When a passenger has actually left the premises of the company, he ceases to be a passenger. 2 Am. & Eng. Enc. L. 745; *Brunswick & Western R. R. Co.* v. *Moore,* 101 *Ga.* 684; *Ga. R. R. & Bkg. Co.* v. *Richmond,* 98 *Ga.* 495. Elliott in his treatise on the Law of Railroads, vol. 4, §1592, says, that the relation of carrier and passenger does not terminate until the passenger has alighted from the train and left the place where passengers are discharged. In note 2 of the same section a number of cases are cited to support the proposition, that where a passenger leaves the train and voluntarily walks along the track, the relation of carrier and passenger ceases. It must therefore be held, under the allegations made in the petition, that when the plaintiff in error alighted in the town of Gordon, left the premises of the defendant company and went to a hotel, the relation of the defendant as a carrier ceased as to him, and that it could only be resumed when he again entered the station-ground for the purpose of taking the car for Savannah. If then the defendant owed any duty to the plaintiff during this interval, it was that which it owed to the general public. As one of the public and without any relation to the further prosecution of his journey, the plaintiff, while at the hotel, formed the desire to visit a certain store in the town and in a locality with which he was not acquainted. For the purpose of reaching this store, he was directed to a path or walk which led across the right of way of the defendant company, and he claims that, because the right of way was not protected by hand-rails nor lighted, he fell from a brick wall erected by the company for the protection of its premises.

If the defendant company owed to the plaintiff, as one of the public, the duty of placing hand-rails near the steps leading into its grounds, or lighting its right of way at night, then; under the allegations he makes, the action could be maintained. It is not, however, an open question in this State that a railroad company is not required to fence in or place guards along its road where there may be cuts or embankments, notwithstanding a public road may run parallel to such railroad. In the case of *Collier* v. *Georgia Railroad,* 76 *Ga.* 611, an action was instituted to recover damages from the Georgia Rail-

road, because at a certain point in the city of Atlanta a street or highway ran alongside a cut or excavation within which the railroad was located, and the plaintiff, who was driving upon the road, was thrown into the cut, demolishing the buggy, injuring the harness, and hurting the plaintiff. The petition in that case alleged the negligence of the company to have been in its failure to erect guards or railing along the cut, and that the injuries were without the fault or negligence of the plaintiff. The court ruled that the omission to fence in, or place guards along, the railroad where there were cuts or embankments was not negligence, as there was no law which imposed a duty or obligation on the company to do so. Again, in the case of *Western & Atlantic Railroad Co.* v. *Rogers*, 104 *Ga.* 227, this court held, "There is no statute of this State requiring the company to inclose its tracks, nor any provision of the common law making it its duty to do so." See also Campbell *v.* New York & New England R. R. Co., 50 Conn. 128. We are cited by plaintiff in error to sections 2220 and 2221 of the Civil Code, as authority that the railroad company should have protected the public by lights or by hand-rails near the steps which led into the cut where the railroad-tracks and warehouse were situated. A reference to these sections, however, will show that their provisions are applicable to the crossing of public roads or private ways, by railroads. Indeed, in the case of *Western & A. R. Co.* v. *Rogers*, supra, this court held that these provisions were only so applicable. The plaintiff in his petition alleges, that immediately in front of the hotel, and just at the street, steps were built by the defendant corporation for the use of the public for the purpose of ingress and egress to and from the railroad-tracks and the warehouse, and that this was the usual route traveled by pedestrians. Under this allegation, this walk can neither be held to be a public road nor a private way in contemplation of the sections of the code cited supra. It is alleged that these steps were for the purpose of ingress and egress to and from the railroad-tracks and the warehouse. While it is alleged that the steps were for the use of the public, we are bound to infer from the language used that it was to that part of the public visiting

the railroad-tracks and warehouse for transaction of business with the railroad company; for it could hardly be supposed that the railroad company would make a means of ingress and egress to and from its warehouse for the general public with whom it had no business.

If it be true, as alleged in the petition, that the steps were built by the railroad company for the use of the public for the purpose of ingress and egress to and from the railroad-tracks and the warehouse, then it would seem that the doctrine invoked by counsel for plaintiff in error, that of invitation, could not be made applicable under the facts alleged. That doctrine is, if the owner or occupant of lands, by any enticement, allurement, or inducement, causes others to come upon the same, he owes a duty to such persons to use reasonable care to see that the premises are safe for that purpose, and is liable for injuries caused by the violation of such duty to one who is free from contributory negligence.    3 Elliott on Railroads, § 1249.    On this question of invitation, the Supreme Judicial Court of Massachusetts in the case of Plummer *v.* Dill, 156 Mass. 426, says: "To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there.    There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant."    In this case the plaintiff in error, confessedly, did not seek to go upon the track nor to the warehouse of the defendant on business, but, following directions, he sought to reach the warehouse as being a point near the store which he desired to visit; and his claim that he went upon the premises of the defendant by invitation is not sound in law, under the allegations which he makes.    Besides, the plaintiff in error, even if an invitation had been extended, did not use the steps by which the invitation was extended.    Unfortunately for him, he wandered from the path which led to the steps, and failed to accept the invitation, if one had been made by the erection of the steps.    What we have said as to

the absence of any law which requires a railroad company to fence its right of way or premises applies in full force as to its duty in lighting such right of way and premises at night. There is neither at the common law nor by our statute any such requirement. It was held in the case of Cincinnati, H. & D. R. R. Co. *v.* Sullivan, 32 Ohio St. 152, that the legislature in the exercise of the police power might constitutionally require railroad companies to light such portions of their railways as were within a city or incorporated village. In the absence of any such statutory requirement in this State, there is no duty resting upon a railroad company so to do.

For the reasons given, we are of the opinion that the defendant company owed no duty to the plaintiff to place guard-rails where, as he alleges, he received the injury by falling from the wall, nor to light its right of way at the place where the injury was received; and the judgment of the court below sustaining the demurrer to the plaintiff's petition is

*Affirmed. All the Justices concurring.*