CALVIN B. PAINTER, ADMINISTRATOR, APPELLANT, V. CHI-
    CAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET
    AL., APPELLEES.

FILED MARCH 28, 1913.   No. 17,142.

1. **Carriers:** ACTION FOR INJURIES: DIRECTING VERDICT. In an action
   against a railroad company to recover for personal injury alleged
   to have been caused by the defendant's negligence, it is necessary
   for the plaintiff to prove by competent evidence that the negli-
   gence of the defendant was the proximate cause of the injury
   complained of; and, where plaintiff fails to furnish such proof, it
   is the duty of the trial court to direct the jury to return a verdict
   for the defendant.

2. **Negligence** cannot be established by inference and conjecture in
   contradiction to the testimony of competent and unimpeached eye-
   witnesses. *Kennedy v. Chicago, B. & Q. R. Co.*, 80 Neb. 267.

3. **Carriers:** PASSENGERS: STATUTORY PROVISIONS. Where a passenger
   places himself under the charge of the carrier as he begins his
   journey, he is a passenger being transported, and is within the
   protection of section 3, art. I, ch. 72, Comp. St. 1911, until he is
   afforded an opportunity to leave the premises of the carrier at his
   destination; but if it appears that the passenger, having reached
   the end of his journey, has departed from the car, and has had a
   reasonable time and opportunity to avoid injury from the opera-
   tion of the train, or further necessity of relation with the servants
   of the carrier, he ceases to be a passenger, and thereafter is not
   within the protection afforded by the statute.

4. ———: ACTION FOR INJURIES: DIRECTING VERDICT. Where it is
   established by the uncontradicted evidence of competent witnesses
   that the plaintiff's injuries were not caused by the negligence of
   the carrier, and that the plaintiff was injured at a time when he
   was not a passenger "being transported over the defendant's road,"
   within the meaning of section 3, art. I, ch. 72, Comp. St. 1911, it
   is the duty of the trial court to direct a verdict for the defendant.

APPEAL from the district court for Hall county: JAMES
R. HANNA, JUDGE. *Affirmed.*

*Fred W. Ashton* and *J. L. Cleary,* for appellant.

*Byron Clark, Arthur R. Wells* and *O. A. Abbott, contra.*

BARNES, J.

This action was brought by the administrator of the estate of one Lloyd Painter for negligently causing the death of plaintiff's decedent. On the trial in the district court for Hall county, and after the introduction of all of the evidence, the court, on motion, directed a verdict in favor of the defendant. Judgment was rendered on the verdict, and the plaintiff has appealed.

It is appellant's main contention that the district court erred in directing a verdict for the defendant. By his petition it was alleged, in substance, that on the 29th day of December, 1908, his decedent bought a first class ticket from the defendant company at Ravenna, Nebraska, and on the morning of that day took defendant's train No. 44, a full-vestibuled passenger train, for Grand Island; that he delivered his ticket to the conductor, Charles Holts, and that, as the train approached Grand Island, brakeman Prey, who was made a defendant, called the station; that decedent left his seat and started toward the door; that he stepped on the platform as the train was pulling into Grand Island; that he had every reason to believe that the platform was protected; that the vestibule was dark and not protected; that the platform was up and unguarded, and that the plaintiff's decedent, without any negligence on his part, fell through and was thrown from the train. It was further alleged that it was the duty of the railroad company to keep vestibule platforms closed; or, if left open, to have an employee, either brakeman or conductor, present to warn passengers and protect them from falling through the opening; that the platform door in said vestibule was not protected, and that Holts, the conductor, and Prey, the brakeman, individually and as employees of defendant, carelessly, negligently and unlawfully permitted the vestibule to remain open and unprotected, and negligently left the said open place unguarded; that, as a result of said negligence, Painter fell through the said opening and under said train, and that the defendants thereby caused his death.

The defendant company, by its answer, admitted that Painter was a passenger on its train from Ravenna to Grand Island on December 29, 1908; but denied that he fell from its train as it was approaching Grand Island, and alleged that he alighted at said station without injury after the train had stopped at the usual place of delivering and receiving passengers. The answer further denied each and every other allegation not specifically admitted or denied; and alleged that any injuries to the person of Lloyd Painter which were received at or about the time mentioned in the petition, and therein alleged to have resulted in his death, were caused by his own gross negligence, his voluntary and excessive use of intoxicants, and by a violation of defendant's rules and regulations brought to his notice, and his injuries were not caused by any negligence or fault of defendant. Defendants Holts and Prey filed a general denial to the plaintiff's petition. To the answer of defendant company, plaintiff replied specifically, denying each of the several allegations of the answer.

There is no conflict in the evidence as to the fact that Lloyd Painter was a passenger on the defendant's train from Ravenna to Grand Island at the time alleged in the pleadings. The plaintiff, to further maintain the issues upon his part, produced the testimony of certain witnesses, from which it appeared that after the defendant's train left the station at Grand Island Painter was found lying beside the track between 400 and 500 feet north of the depot, in an unconscious condition, with both of his feet cut off; that it was apparent that he had received his injuries by being run over by the defendant's train. Plaintiff produced no evidence, however, showing or tending to show that Painter fell from the defendant's train in the manner alleged in his petition. In fact, plaintiff produced no testimony showing or tending to show the manner in which Painter received his injuries. On the other hand, conductor Holts testified that he saw Painter in the depot at Ravenna before the train arrived at that

point; that the train was late, and Painter was finding
fault because he had been called to take the train to ›
soon; that he showed signs of intoxication; that he talked
loud, and conducted himself in such a manner as to at-
tract Holts' attention and the attention of other persons
waiting in the depot; that he learned before the train
arrived that decedent's name was Painter. His testimony
was corroborated by defendant Prey, who was his brake-
man, and was waiting for the arrival of his train, and a
number of other witnesses who were present in the depot
at Ravenna at that time. Holts further testified that
after the train started from Ravenna he took up Painter's
ticket, and was requested to call him when the train
reached Grand Island; that he notified brakeman Prey
of Painter's desire to be awakened at Grand Island, as
that was the place of his destination; that Painter oc-
cupied a seat in a chair car next behind the smoker; that
he kept in mind the fact that Painter had requested that
he be awakened at Grand Island, and when they were
nearing that station he called the brakemen's attention
to that fact. Holts also testified that he had a passenger
on his train named Flynn, who had a ticket from Mason
City; that he had seen Flynn at different times before,
and knew that he was on the train that night because he
had also asked to be awakened at Grand Island; that Flynn
was riding in the forward chair car on the north side,
three or four seats from the front end, and sat about op-
posite Painter; that when they arrived at Grand Island
and after the train stopped at the depot, both Painter and
Flynn went out of the front door of the chair car and
got off at the same opening between the smoker and the
chair car; that brakeman Prey was guarding the opening.
The witness further said: "I was at the opening at the
head end of the rear chair car when I saw Painter walk-
ing north. I had told Prey to be sure and awaken him,
and had asked Prey if he had gotten off. The trap doors
were opened by brakeman Prey about 1,000 feet before we
reached the station,   *   *   *   two were opened; he first

opened one, and then went ahead. I guarded the first one while he opened the second. The vestibules were lighted with Pintsch gas lights. The vestibules are always lighted." Holts was corroborated by the evidence of brakeman Prey, who stated that he guarded the vestibule at the front end of the chair car where Painter alighted; that he saw Painter get off the train onto the platform after the train had stopped at the depot, and saw him start north, or rather northeast along the platform towards the rear of the train.

Irwin Flynn, who was the passenger mentioned by conductor Holts, testified that he came to Grand Island on train No. 44, December 29, 1908. He said: "Upon arrival I got off the train and went in a bus from the Burlington station over to the Union Pacific depot. Then I went back to the Burlington station, arriving there about a half hour after the train had first arrived and found Painter lying in the men's waiting room with his feet cut off. I recognized Painter. I had seen him on the train. I rode in the second seat from the front end of the north side of the car and Painter rode on the south side, a seat or two back from me. I got on at Mason City, and Painter got on at Ravenna. When I got up to get off the car at Grand Island, Painter was in the car there sitting down. I got off the steps and the trainman was standing there, but I can't say who he was. The train had stopped when I got off. The opening at which I alighted was about six feet north of the bay window in the depot."

One Stephen Velda, a witness for the defendant, testified, in substance, that he was in the depot at Grand Island when No. 44 came in on the morning of December 29, 1908; that the train was standing still when he came out of the depot. He further said: "When I got out of the depot, I kept toward the north end of the depot, to get across the street, the train was in my way. While I was walking along the train I saw the man standing right next to the cars between the second and third coach, but it was on the rear end. I looked at him and saw there

was nothing wrong, and I kept on going across the street, and went about a couple of car lengths, and when I got across the tracks * * * I heard the train start off, and at the same time I heard somebody call for help, and I turned around and started back, and saw the man lying there, and saw what the trouble was with him. * * * When I heard the outcry, the train had moved about 250 feet."

The brakeman, Harry Prey, testified, in substance, as follows: In the station at Ravenna before the train left that morning, I had seen a man who was said to be Mr. Painter. He wore a light hat and a black overcoat. He was on the train after we left Ravenna, sitting four or five seats back, on the south side of the chair car. I was going through to close the vestibule doors when he motioned to me, and said: "Will you see that I get off at Grand Island?" When near Grand Island I awakened him, and also awakened the rest of the Grand Island people; and after they whistled for the station I started from the rear end, and took my time going through to see that everybody was awakened who was to get off at Grand Island. I came into the vestibule at the head end of the rear chair car, and opened that vestibule. Conductor Holts was there. I then went on through the next car, where Mr. Painter was; that was the chair car right back of the smoker. I took my time going through there to see that everybody was awake. I came to Painter and touched him on the shoulder, and said, "Grand Island!" I called that car as I went through, and then went on into the smoking car, and did the same thing there, taking time to see that everybody was awake, and I came back to the end of the first chair car, behind the smoker, and opened that vestibule. I remained there until the train stopped at the depot. From the time that vestibule was opened until the train came to a dead stop at the station nobody got out of that opening. I opened the two vestibules. The rest of the vestibules were closed. After we stopped at Grand Island Painter got off at the

opening where I was. He was the last passenger to get
off at that opening that I was guarding. The last I saw
of him he was about six or seven feet north of the open-
ing going towards the depot. After he alighted the con-
ductor came and wanted to know if that man got off—the
old gentleman that he had told me about. I pointed him
out, and said, "There he goes." He got off the train
safely, and did not receive any injuries while getting off.
He was walking unaided, looking out for himself. The
step at which Painter got off was about opposite the bag-
gage room door. The waiting room and station office were
lighted up. I knew nothing about the accident when I
left Grand Island. The first I heard of it was at Aurora,
where we got word by wire. No witness disputes this
evidence in any way. It thus appears that the plaintiff
failed to prove the allegations of his petition as to the
manner in which his decedent was injured.

Plaintiff contends, however, that, if the evidence was
insufficient to establish his charge of negligence, still his
cause should have been submitted to the jury on the
theory that when his decedent was injured he was within
the protection of section 3, art. I, ch. 72, Comp. St. 1911,
which provides: "Every railroad company, as aforesaid,
shall be liable for all damages inflicted upon the person
of passengers while being transported over its road, ex-
cept in cases where the injury done arises from the crim-
inal negligence of the person injured, or when the injury
complained of shall be the violation of some express rule
or regulation of said road actually brought to his or her
notice." It must be observed that the cause was not tried
upon that theory; and, as we view the evidence, it fails
to show that plaintiff's decedent was a passenger "being
transported" over defendant's railroad at the time the
accident occurred. The section of the statute quoted
above has been construed by this and other courts in many
cases, and the rule is well settled that after a passenger,
as defined in the statute, places himself under the charge
of the carrier as he begins his journey until he is afforded

an opportunity to leave the premises of the carrier at his destination, he is a passenger being transported; but if it appears that the passenger, having reached the end of his journey, has departed from the car, and has had a reasonable time and opportunity to avoid further injury from the operation of the train, or further necessity of relation with the servants of the carrier, he ceases to be a passenger, and stands toward the carrier as one of the ordinary public. *Chicago, R. I. & P. R. Co. v. Sattler,* 64 Neb. 636; *Fremont, E. & M. V. R. Co. v. Hagblad,* 72 Neb. 773, 790; *Chicago, B. & Q. R. Co. v. Mann,* 78 Neb. 541; *St. Louis, I. M. & S. R. Co. v. Beecher,* 65 Ark. 64, 44 S. W. 715; *King v. Central of G. R. Co.,* 107 Ga. 754, 33 S. E. 839; *Hendrick v. Chicago & A. R. Co.,* 136 Mo. 548, 38 S. W. 298; *Pittsburgh, C. & St L. R. Co. v. Krouse,* 30 Ohio St. 222; 6 Cyc. 541, 542.

As we view the evidence, plaintiff's decedent had ceased to be a passenger when he received his injuries. The defendant company had safely delivered him from its train to its depot platform, and afforded him an opportunity to safely depart from the place where he was delivered. He had, in fact, left the depot and the depot platform, and must have wandered along the track by the standing train to a point at least 150 feet from the end of the depot platform. He had broken away from the care of the defendant's servants, and therefore was not a passenger "being transported" when he was injured. Plaintiff's petition does not charge, nor does the evidence show, that the defendant company was guilty of any breach of duty to the decedent after his safe delivery upon the depot platform. Therefore we are of opinion that the district court properly sustained the defendant's motion, and directed the jury to return a verdict in its favor.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

REESE, C. J., ROSE and FAWCETT, JJ., concur.

LETTON, SEDGWICK and HAMER, JJ., not sitting.