NASHVILLE, CHATTANOOGA & ST. LOUIS RY. CO.
*v.* COOK.

No. 9342. JUNE 15, 1933.

*Fitzgerald Hall* and *Wright & Covington,* for plaintiff in error.
*R. Carter Pittman* and *Porter & Mebane,* contra.

BECK, P. J. W. O. Cook brought suit against Nashville, Chattanooga & St. Louis Railway Company, and alleged in the petition that at night, in the City of Rome, his son was driving an automobile belonging to plaintiff along Fourth Avenue in that city, and that due to the fog and rain he ran into a ditch or excavation which was upon the right of way of the railway company which abutted on Fourth Avenue, and that the automobile was damaged in the particulars alleged. It is further alleged in the petition that Fourth Avenue runs directly into and terminates at the right of way of the railway company; that at the end of the street or avenue and at the end of the paving thereon, and on the right of way of the railway company, there was a ditch, which had been maintained for a number of years upon the property and right of way of the railway company; that Fourth Avenue had been a public street of the City of Rome for about thirty years; that the ditch, hole, or excavation in and along the track of the defendant and its right of way, and immediately adjacent to the termination of Fourth Avenue, had existed and been allowed to remain by the defendant in the condition described for approximately ten years; that it was into this ditch or excavation that the plaintiff's son ran the automobile. The avenue referred to runs to within a very short distance of the ditch or excavation and almost perpendicular to it; the railway running north and south and the avenue running east and west. The defendant was charged with negligence in creating and maintaining the deep ditch or excavation in question and at a point where Fourth Avenue ends and the pavement thereon terminates. It is alleged further, that the track of the defendant leading into Rome is laid in and along what is known as Railroad Street in Rome; that Fourth Avenue is one of the principal residential streets of the city, is paved with concrete, and is approximately forty feet wide where it terminates at the right of way of the defendant on Railroad Street; and where the avenue referred to abruptly ends, approaching the railroad track in an easterly direction, the street is downgrade to within about twenty feet of the right of way of the defendant; that at that point there is a ditch about six feet deep, forty feet in length, and four feet in width, which ditch begins immediately at the end of the pavement where Fourth Avenue terminates; and that the ditch or excavation extends to within three and a half feet of the railroad track of the defendant, and had existed and

been allowed to remain in this condition for about ten years; that the defendant knew of the condition of Fourth Avenue and of the condition of the described ditch in the right of way. The night on which the automobile ran into the ditch or excavation was rainy and foggy, and the automobile was being driven in an easterly direction. Petitioner's son, who was driving the automobile, was a stranger in the City of Rome and thought that Fourth Avenue was a street that led him to where he wanted to go. It is further alleged that the lights on the automobile were burning, but inasmuch as Fourth Avenue down to within approximately twenty feet of the defendant's right of way is down-grade, the lights were thrown immediately in front of the automobile on the street, instead of out and beyond the automobile, and that, because of the light being so thrown on the street immediately in front of the automobile because of the fog and rain, petitioner's son did not see the deep ditch at the termination of the pavement at Fourth Avenue, and by the exercise of ordinary care could not see the ditch until the automobile was within six feet of it, and until it was too late for him to stop the car before being plunged over into the ditch, and the automobile ran into the ditch and was completely demolished and its market value destroyed. It is charged that the defendant was negligent in creating and maintaining the ditch or excavation on its right of way at the point described, and in not erecting and maintaining barriers on its right of way where the pavement on Fourth Avenue terminates; and negligence in other respects is charged. Petitioner prayed judgment for damages to his automobile.

To this petition the defendant railway company filed a general demurrer upon the ground, among others, that the facts therein alleged do not constitute negligence upon the part of the defendant; that it is not alleged or shown that the defendant owed to the plaintiff any duty with respect to the matters and things alleged in the petition to be negligence upon its part. The court rendered judgment sustaining the demurrer and dismissing the petition. A writ of error was sued out to the Court of Appeals; and that court in deciding the case held that the trial court erred, and reversed the judgment sustaining the demurrer. On this judgment of the Court of Appeals a writ of certiorari was granted, and the case is here for review.

The Court of Appeals made this ruling: "Where immediately

at the end of a paved road, and upon the property of a landowner abutting the end of the road, there is knowingly and negligently maintained by the landowner, without rails or barriers, an excavation or ditch six feet deep and four feet in width, the owner of the land is liable in damages for injuries received by a person traveling along the roadway at night who, in the exercise of due care and without negligence, runs into the ditch or excavation." That ruling resulted, necessarily, in the reversal of the judgment of the trial court; and this court is of the opinion, after careful consideration since granting the writ of certiorari, that the Court of Appeals properly decided the controlling question in the case. This case differs materially from certain cases to which our attention is called in the brief of counsel, growing out of accidents at points on a railroad right of way where the right of way ran parallel to the public road upon which vehicles were traveling, and where the driver of the vehicle left the road and drove into and upon the right of way of the railway company. Our attention is especially called to the case of *King* v. *Central of Ga. Ry. Co.*, 107 *Ga.* 754 (33 S. E. 839), where it was held: "Where, in an action against a railway company for personal injuries occasioned by falling into a railroad-cut at night from a public street immediately adjacent to and running parallel with the cut, the only thing alleged against the defendant as negligence is its failure to place a guard-rail or light at the place in question, it not being one to which sections 2220 and 2221 of the Civil Code are applicable, or one at which, under the facts alleged, the company, relatively to the plaintiff, was under a duty of erecting a guard-rail or placing a light, there is no error in sustaining a demurrer to the plaintiff's petition." And in *Collier* v. *Georgia Railroad*, 76 *Ga.* 611, it was said: "There is no duty or obligation on railroad companies in this State to fence in or place guards along their roads where there may be cuts or embankments, notwithstanding a public road may run parallel to such railroad." But in the cases from which the above extracts are taken the railroad ran parallel to the public street or road. In the present case the street of the City of Rome along which the plaintiff's son was driving the automobile belonging to the former was almost perpendicular to the railway's right of way and track, and there terminated abruptly. The public had a right to travel in automobiles along this paved street; they were expected to travel along there; and it must have

been apparent to the railway authorities, or to any one else who was familiar with the situation, that sooner or later on a dark night some one using the street for a lawful purpose and in a lawful way would drive into that ditch or excavation. It may be that both the City of Rome and the railway company were guilty of a tort in maintaining and continuing the situation described. Possibly both were tort-feasors in regard to one driving along the street who in the exercise of due diligence ran into the ditch or excavation made and maintained by the railway company; but that would not prevent a suit against the railway company alone. We think the principle announced in the case of *Hutson* v. *King*, 95 *Ga.* 271 (22 S. E. 615), is more nearly applicable to this case than the principles ruled in those cases from which we have taken the above extracts. There it was said: "If upon the premises of an owner situated in dangerous proximity to a public thoroughfare there be an excavation into which persons passing along the thoroughfare, in the exercise of ordinary care, might casually fall, it is the duty of the owner of the premises so to inclose the same as to afford reasonable immunity against the danger which might otherwise probably result from its existence. Whatever may be the duty of an owner of premises with reference to persons who unlawfully intrude thereon, such owner has no right to maintain upon his premises any dangerous nuisance which might imperil the lives of those persons who from lawful necessity or convenience might pass along, and by accident or some superior force, and without fault upon their own part, fall or be thrown from the sidewalk or from a public thoroughfare into such excavation. A man must so guard his premises situated immediately adjacent to a public highway, as that one who of necessity devitates slightly therefrom may not be injured. The second count in the declaration, upon these principles, states a cause of action. It alleges the existence and character of this dangerous nuisance upon the defendant's premises; alleges that plaintiff was passing along the street in the exercise of ordinary and reasonable care, and, without fault upon his part, casually fell therefrom into this cellar upon the defendant's premises. We think, if the facts be proved as laid in this count of the declaration, a recovery may be had; and that is the test always in considering, upon a demurrer, the sufficiency of a declaration." The facts of the present case seem to us to give even a stronger right to the application of the principle in

the *Hutson* case than do even the facts in the latter case where the principle is stated. See also *Burton* v. *W. & A. R. Co.*, 98 *Ga.* 783. In *City Council of Augusta* v. *Dozier*, 126 *Ga.* 524 (55 S. E. 234), this court held: "The City of Augusta is the owner of the canal and the land upon which the body of water known as Lake Olmstead is situated. This land adjoins a public highway. The city therefore owes to travelers upon the highway the same duty that any owner of land adjoining a highway owes to travelers thereon. What is the duty of such an owner to travelers on an adjacent highway? An owner of land abutting upon a highway is liable to travelers for injuries resulting from the maintenance of those things upon his property which are likely to render travel upon the highway unsafe. Many of the cases in which the rule is announced involved excavations on the land adjoining the highway, but the rule is of course not limited to cases where the injury resulted from an excavation. If the public lay out a highway so near a natural watercourse on the land of an adjacent proprietor that travel along the highway is rendered unsafe on account of the proximity of the stream, it may be that the owner of the stream would be under no obligation to erect rails or guards along the course of the stream; but when the owner creates and maintains upon his land an artificial lake or body of water so near the highway and so located relatively to the same that travel thereon is rendered unsafe, a duty to so guard the same that travelers in the exercise of due diligence will not fall or be precipitated therein devolves upon the owner. *Hutson* v. *King*, 95 *Ga.* 271 (3); 15 Am. & Eng. Enc. Law (2d ed.), 437, and cases cited. The distance from the highway to that which caused the injury will in many cases determine whether there was a duty to guard the highway. When the adjacent land is level or practically so, and that which caused the injury is so far removed that a traveler in the exercise of due care would not have been injured thereby, no duty to the traveler would arise. Where the land is precipitous, a duty to the traveler arises where under other conditions no duty would arise." See also *Southern Ry. Co.* v. *Autry*, 36 *Ga. App.* 552 (137 S. E. 414); *Williamson* v. *Southern Ry. Co.*, 42 *Ga. App.* 9 (155 S. E. 113).

*Judgment affirmed. All the Justices concur.*