STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL,
APPELLANT, V. GEORGE A. KISTLER, APPELLEE.

FILED NOVEMBER 2, 1929. No. 26954.

C. A. Sorensen, Attorney General, and Peterson & Devoe, for appellant.

Bernard McNeny and Raymond M. Tibbets, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action brought by the state of Nebraska, on the relation of the attorney general, against the defendant, to enjoin the latter from obstructing or preventing the agents of the state from applying the tuberculin test to defendant's cattle. The petition alleged that prior to the enactment of chapter 12, Laws 1927, a systematic inspection, examination and testing of cattle for tuberculosis was undertaken in Adams county, Nebraska, on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and more than 5,000 cattle were thereby tested in Adams county; that on January 6, 1928, said department duly declared Adams county to be an area for inspection of breeding cattle for tuberculosis, pursuant to the said chapter 12, and partic-

ularly section 10 thereof, the order of declaration reciting that prior to the passage of said act a systematic inspection and testing of said cattle for tuberculosis was undertaken in said county on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and that more than 5,000 cattle were tuberculin tested; that defendant refused to submit the cattle owned and kept by him in Adams county to the test, and prevented the agents of the state from carrying on the same; that since said enactment 13,763 cattle have been tuberculin tested in said county. The answer of the defendant denies generally and specifically each allegation of the petition, and a general denial was filed in reply.

The case was tried to the court, and upon the conclusion of plaintiff's testimony the relief was denied the plaintiff by the court, and the action dismissed. Plaintiff appeals.

The sole question for our determination is the construction of section 10, art. II, ch. 12, Laws 1927, which is as follows:

"Where any county has been declared an area for the inspection, examination and testing of cattle for tuberculosis under the provisions of any preexisting legislation of this state, or where, prior to the passage of this act, a systematic inspection, examination and testing of cattle for tuberculosis has been undertaken in any county on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and more than five thousand cattle have been tested in such county prior to the passage of this act, the inspection, examination and testing of cattle for tuberculosis in such county or counties may be continued by the department under the provisions of this act without petition or hearing in all respects as if such petition had been filed and hearing had and the county declared an area hereunder."

A brief review of the legislation on this subject may aid in construing this section and thereby determining the legislative intent. By section 6, art. XX, ch. 190, Laws 1919, authority was given the department of agriculture to

quarantine or destroy all live stock found in the state and having an infectious or contagious disease. It was not until chapter 7, Laws 1925, that provision was made for the establishment of areas of inspection and systematic inspection of cattle for tuberculosis was provided for by legislative act. That act, though less complete, was quite similar to the act of 1927, providing for the establishment of county areas of inspection upon petition of 60 per cent. or more of the owners representing 51 per cent. of breeding cattle as disclosed by the last assessment rolls; and by section 9 it was attempted to provide for the establishment of such area without petition where the area plan of tuberculosis eradication had been theretofore adopted by the department of agriculture. Section 9, however, was declared unconstitutional, as not within the title of the act, in *State v. Heldt,* 115 Neb. 435, and, apparently to meet the views expressed by the court in that case, the act of 1927 was passed; section 10 covering substantially the same ground as section 9 in the previous act. No question of the constitutionality of the present act is presented.

From an examination of the act of 1927, it is clear that the jurisdiction of the department was intended to be based upon either of two situations— (1) where an area had been established by petition as provided by section 1, art II, of the act, and (2) where, prior to the passage of the act, a systematic inspection, examination and testing of cattle for tuberculosis has been undertaken in any county on a cooperative basis by the United States bureau of animal industry and the Nebraska department of agriculture, and more than 5,000 cattle have been thereby tested, in which case no petition was required.

It is established by the evidence beyond dispute that in the years 1921 and 1922 the United States bureau of animal industry and the state department of agriculture, cooperating, conducted a tuberculin inspection and examination of 8,772 cattle in Adams county, of which 6,543 were tested in 1922, and this is the inspection and examination referred to in the recital of the order of January 6, 1928, above referred to.

It is therefore apparent that, if the recitals of the order are true, the department of agriculture was fully justified in demanding an inspection of defendant's cattle, but the defendant contends that the evidence fails to show a "systematic inspection and examination" within the terms of the statute, and quotes Webster's definition of systematic as "of, pertaining to, or consisting in, system," etc. We think, however, that we will get a better idea of the meaning of the adjective from the definition of the noun. System is defined in the Standard Dictionary as "orderly combination or arrangement, as of particulars, parts, or elements, into a whole, especially, such combination according to some rational principle; * * * any methodic arrangement of parts." In common parlance, to do a thing systematically is to do it by a certain method previously adopted as tending to accomplish the desired result. It is distinguished from sporadic, haphazard, and disconnected acts having no tendency to constitute a complete and homogeneous whole.

The evidence shows that the inspection of 1921 and 1922 was carried on by the agents of the state and federal government. The method of operation was stated by witness Hayes, under whose supervision it was, to be as follows: "The arrangement of doing it in a systematic way was to go into the county, into the different precincts, and test in all of those precincts, completing the work in the different precincts as we went along." The results covered the number of herds, the number of cattle tested, the result of the test, the percentage of herds infected, and the percentage of cattle infected. The records of the department introduced in evidence show that such inspection was carried on for the purpose of covering the entire county, and according to a system or method adopted by the department. It was not a mere sporadic or occasional inspection of any particular "critter" or group of cattle suspected of or charged with being afflicted with tuberculosis, but was in pursuance of a general scheme to discover and eradicate that disease in a definite area—Adams county. We

are of the opinion that the inspection and examination referred to was a systematic one within the meaning of that term in the statute.

Objection was made to exhibit 2 as incompetent and no foundation laid. This was a compilation from the official records of the department of agriculture, made by the witness Hayes from original records which were present in court, and was competent; no objection being made that the records themselves were not introduced.

Defendant contends further that, because of the lapse of time from the inspection in 1922 to the passage of the act, the legislature could not have had in mind such an inspection. There is, however, no limitation in the act, and the only limitation which the court would be authorized to adopt regarding the time would be that it must be a reasonable time. It will be noted that, before an area for inspection may be considered established without petition, it must have been so declared under the provisions of pre-existing legislation, but no such requirement exists under the second basis of jurisdiction, the language of the act being simply "where, prior to the passage of this act, a systematic inspection, examination and testing of cattle for tuberculosis has been undertaken," etc. We are not prepared to say that the period of time referred to is unreasonable, but think it quite probable that the legislature in enacting the section in question had in mind the organized efforts of the department, without specific legislation on the subject, to discover and eradicate the disease of tuberculosis among cattle, and in proper cases to eliminate the necessity of the somewhat cumbrous method by petition. The act of 1927, by section 10, was intended to preserve to the state and cattle-owners the benefit of such inspection as had been theretofore carried on in the manner required by the then act, and operated to constitute the counties so inspected protected areas, or put them in the same position as if the area had been created by petition under former legislation. Had there been such legislation in 1922 and Adams county had been created an area thereunder, there

could be no question of jurisdiction on account of the lapse of time. We think there is none here. Counsel for defendant argues that, because a new examination of the entire area is required owing to the lapse of time since the examination in 1922, petitions should have been obtained, which, he says, could easily have been done. But this is beside the point. If a systematic examination was made of the area in 1922, as we have attempted to show, a petition was not necessary, the area having been already established.

Defendant cites rule 5, paragraph 22, of the rules adopted for the assessment and maintenance of tuberculosis-free accredited herds of cattle, as establishing a limitation of three years beyond which no inspection of cattle may be considered of any effect. The material part of the rule is as follows:

"If as the result of one complete tuberculin test within the designated area, the total number of reactors is less than one-half of one per cent. of all the cattle within the area, the area shall then be declared an official modified tuberculosis-free accredited area for a period of three years by the cooperating federal and state authorities."

We can discover no relation between the rule and the legislation. The rule merely fixes the time under the conditions stated during which a retest may not be required. If the inspection of 1922 had been within three years of the present demand, it is possible the rule might have had some application, but we do not decide the point.

It is further argued that, by the use of the language "examination and testing of cattle for tuberculosis in any such county or counties *may be continued* by the department," the legislature referred to an action in progress, that "it is clear that it would be only an operation that was still in progress, that can be continued. It is only an examination begun and not completed to which the phrase 'may be continued' can be applied." We look upon this suggestion as rather technical. We think the power conferred upon the department of agriculture is a continuing

one, and that after having completed the inspection and examination of a certain area it might continue to inspect it as time goes on and conditions in the area require it; and this is the sense in which the word was used by the legislature.

We conclude that the learned district court was in error when it denied relief and dismissed the plaintiff's action, and its decree is reversed, with instructions to enter a decree for the plaintiff as prayed.

REVERSED.