JACK WEBBER ET AL., APPELLEES, V. CITY OF SCOTTSBLUFF ET AL., APPELLANTS.

293 N. W. 276

FILED JULY 5, 1940. No. 30936.

*Straight Townsend,* for appellants.

*Morrow & Miller, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

This case, an appeal from the district court for Scotts Bluff county, arises upon the suit of the plaintiffs to enjoin the defendant city and other defendants who are officers thereof from proceeding to the condemnation of certain real estate adjacent to the city for the purpose of extending Broadway street or boulevard from its junction with Twenty-seventh street which is the northern boundary of the city. The property sought to be so condemned lies immediately adjacent to the said streets at the vicinity of their intersection. The city of Scottsbluff had passed an ordinance commencing a proceeding to appropriate the land sought to be condemned for streets and boulevards. Shortly thereafter there was filed in the office of the city clerk a petition asking that said ordinance be referred to the voters for their rejection or approval under the provisions of the initiative and referendum law, which it was claimed had theretofore been adopted and was in force in the city. Upon

trial of the case the district court found that the initiative and referendum law was in force and that a sufficient petition had been filed and that this condemnation ordinance should be referred to the voters for their adoption or rejection. The court also found that the city had authority to condemn for the purpose of streets and boulevards property outside the city limits.

The plaintiffs appeal from that part of the decree holding that the city has power and authority to condemn land outside of the city limits for streets and boulevards, and the defendants appeal from that part of the decree holding that the initiative and referendum law was in force in the city of Scottsbluff and enjoining the city from enforcing its condemnation ordinance until the same should receive the approval of the majority of the voters on the submission of the proposition.

There is no controversy as to the facts in the case and we find no particular difficulty in determining the propositions of law.

Upon the question of the authority of the city to condemn land outside of the city limits for streets and boulevards we think the same is found in the provisions of section 16-601, Comp. St. 1929, and other provisions of that article. Said section provides:

"The mayor and city council shall have power to purchase or appropriate private property for the use of the city for streets, alleys, avenues, parks, parkways, boulevards, sewers, public squares, market places, public heating plants, power plants, gas works, electric light plants or water works including mains, pipe lines and settling basins therefor, and to acquire outlets and the use of streams for sewerage disposal; and when necessary for the proper construction of any of the works above provided, the right of appropriation shall extend for a distance of ten miles from the corporate limits of the city."

The objection here raised to the authority of the city to condemn outside property in the present instance is based upon the argument that the word "works" as found in the

quoted section does not include the subject of streets or boulevards, but is limited to the instance in which that word is previously used as in connection with gas works or water works; but we think it plain that such a construction would be over-technical and unwarrantably narrow in view of the contents of the statute itself which is dealing with all the matters of public improvements mentioned, all of which have at one time or another been held to be public works as was the case when this court determined the case of *Union P. R. v. Commissioners of Colfax County,* 4 Neb. 450. Similar usage and application of the term has been recognized in *Mayor and Aldermen of Wetumpka v. Winter,* 29 Ala. 651, 660. We agree in this instance with the argument of the defendants that it seems more reasonable and logical that the word "works" is not used in the statute as a word of limitation, but as an all-embracing term intended to cover all the purposes set forth therein.

Some further contention is made to the effect that condemnation in such case could not be allowed because no means are designated by which payment of damage may be made and this contention is upon a somewhat similar construction of a following provision in the statute, section 16-603, Comp. St. 1929:

"Payment of damages assessed for the appropriation of private property for streets, alleys or boulevards in cities of the first class with a population of more than five thousand (5,000) and less than twenty-five thousand (25,000), may be made out of the general or any other surplus fund."

The argument is that this means the payment can be made only when the property lies wholly within the city. We think that this contention is likewise too narrow and confined and that the statutory provisions authorize both the appropriation of outside property and payment therefor in the manner specified.

Upon the other hand, it is contended that the initiative and referendum law is not in force in the city of Scottsbluff. It is admitted, however, that proceedings were had there to adopt the same. In 1911 a petition signed by 68

persons was filed with the clerk requesting that the question of adopting the initiative and referendum be submitted to the voters at the ensuing election. The record shows that it was moved, seconded and carried that the prayer of that petition be granted and the initiative and referendum be submitted to the voters of Scottsbluff and the clerk had the same printed on the ballot for use in the general election April 4, 1911. The records further show that after that election the canvass of the votes showed 220 for and 15 votes against the adoption of the referendum.

The defendants support their contention that the referendum law was not adopted nor in force upon two propositions—that the petition asking the submission of the proposition was not signed by 15 per cent. of the voters, and that no ordinance was passed calling a special election for the submission of the proposition. The conclusion that the signatories to the petition were less than 15 per cent. of the voters is derived from consideration of the votes cast at the following election for other offices, and not based upon any previous count nor upon the votes cast upon this proposition. In any event the provision of the statute is only that "to be mandatory" the petition shall be signed by at least 15 per cent. of the voters of the city. The council might have acted without any petition, so that the matter of the 15 per cent. requirement in so far as concerns the submission of the question was not governing. Neither was an ordinance calling a special election required, because a following section of the statute, section 18-516, provides that, when such petition does not request that the ordinance be submitted to the voters at a special election, the clerk shall cause the same to be submitted to the voters at the first regular election after the expiration of 15 days from the filing of the petition. This was done and the result was as stated.

The motion adopted by the board of trustees submitting the question was to all intents and purposes a resolution and was sufficient under the decisions. *State v. Babcock,* 20 Neb. 522, 31 N. W. 8; *State v. Marsh,* 106 Neb. 547, 184

N. W. 135; *Hevelone v. City of Beatrice,* 120 Neb. 648, 234,
N. W. 791.

The trial court was right in its decision upon both propositions and its judgment is therefore

AFFIRMED.