LUCILLE O'DELL, ADMINISTRATRIX OF THE ESTATE OF JUDD MARION O'DELL, DECEASED, APPELLANT, V. TILDEN A. GOODSELL, SHERIFF OF DAKOTA COUNTY, NEBRASKA, ET AL., APPELLEES.

41 N. W. 2d 123

Filed February 3, 1950. No. 32629.

George W. *Leamer* and Carlos W. *Goltz,* for appellant.

*Warner & Warner, John E. Newton, Cook & Cook,* and *Mark J. Ryan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages resulting from the death of plaintiff's intestate while a prisoner in the county jail in custody of the defendant Goodsell, sheriff of Dakota County. Issues were made and trial was had resulting in a directed verdict for defendant. In O'Dell v. Goodsell, 149 Neb. 261, 30 N. W. 2d 906, we reversed the judgment and remanded the cause because of error in failing to submit issues of negligence of defendant sheriff to the jury and in dismissing plaintiff's action. The cause again was tried resulting in a verdict for the defendant. Plaintiff appeals. We affirm the judgment of the trial court.

Herein we use the designation "defendant" with reference to the defendant sheriff.

The plaintiff's first assignment of error is that the trial court erred in giving the following instruction to the jury: "The Statutes of Nebraska do not require the sheriff or jailer to maintain a constant guard over prisoners incarcerated in the County Jail for the purpose of preventing them from harming themselves either deliberately or accidentally.

"The only provision of the statute with reference to the maintenance of a constant guard at county jails applies to a situation when the condition of the mail (sic) is such as requires a constant guard to prevent the escape of prisoners."

Plaintiff contends that this instruction states that the only requirement of a guard is to prevent the escape of prisoners. Obviously, the instruction does not so state. It sets out what the statutes do and do not require with reference to maintenance of a constant guard. It is not contended that there is a statute requiring the sheriff

to maintain a constant guard over prisoners so there appears to be no error in the statement in the first sentence of the instruction. The second sentence obviously refers to that part of section 47-113, R. S. 1943, which provides that when the condition of the jail requires a constant guard to be kept to prevent the escape of prisoners, the sheriff shall be allowed pay for guarding or procuring guard. There appears to be no error in the statement in the second sentence of the instruction.

But plaintiff argues that the jury could have concluded from the instruction that a guard not being required by statute, the defendant had no duty to exercise due care in the premises, and hence the instruction amounted to one to find for the defendant.

In our opinion in the former appeal we referred to some of the statutory duties of the sheriff and said: "Beyond statutory requirements a sheriff is bound to exercise in the control and management of the jail the degree of care requisite to the reasonably adequate protection of the prisoners or inmates." Obviously the jury should have been instructed as to the duties other than statutory of the defendant.

The rule is: "Instructions are to be considered together to the end that they may be properly understood and, when so construed, if as a whole they fairly state the law applicable to the issues presented by the pleadings and the evidence in support thereof, error cannot be predicated on the giving of the same." Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680.

Before giving the challenged instruction, the court instructed as to the duties of a sheriff or other police officer to arrest and detain under the provisions of sections 29-401 and 29-410, R. R. S. 1943. The court likewise instructed as to the duties of the sheriff as jailer under the provisions of section 23-1703, R. S. 1943. The court instructed as to the statutory duties of the county board to provide a jail and keep it in repair under section 23-120, R. S. 1943, and that those duties did not devolve

upon the sheriff. The trial court then gave the challenged instruction, followed by this instruction: "The provisions of the statute with reference to the duties of a sheriff in the supervision and confinement of prisoners placed in his custody are not the only ones to be observed in order that his conduct fulfills his duties of exercising reasonable care. It is a fundamental rule of action that he shall exercise reasonable care under the circumstances, considering all surrounding conditions of which he has knowledge or by the exercise of reasonable care would have knowledge."

The plaintiff does not contend that there is error in the other instructions mentioned above. Taking the group as a whole it is patent that the trial court instructed as to statutory duties, those duties not, or only partially, covered by statute, and those duties other than statutory. When so considered we see no merit in the assignment.

Plaintiff's next assignment of error is that the court erred in not following the mandate of this court in the previous appeal. Specifically, reference is made to those provisions of the opinion that it was error to refuse to submit to the jury (1) the failure of the sheriff to provide a guard for the jail and the proper inferences to be drawn from such failure; (2) the question of the adequacy of ventilation under the circumstances; (3) the failure to make outside communication available and the proper inferences to be drawn therefrom; and (4) the question of whether or not the sheriff failed to respond to his duty in the light of the potential for danger which he knew or should have known.

As to (1) and (2), plaintiff alleged that the defendant left no guard in or about the jail in charge of the prisoners, and that the defendant failed to provide proper ventilation. The trial court specifically submitted these two questions to the jury as claimed acts of negligence with an instruction elsewhere as to the burden of proof of negligence in one or more of the respects alleged, and stated that the jury could consider the logical and proper

inferences deducible therefrom. As to (3), we find no specific allegation in plaintiff's petition that defendant was negligent for failure to make outside communication available. We do find an allegation that he did not provide proper fire protection. That allegation of negligence also was submitted to the jury. Under the circumstances here, the matter of means of communication could be material only as to the question of fire protection. As to (4), we have heretofore set out the instruction given as to the duties of the sheriff other than statutory. That instruction was in general accord with plaintiff's allegation of negligence in that regard. In this connection it is noted that, in response to a motion to make more definite and certain, plaintiff alleged that she was unable to state what other duties or acts she claimed defendant should have performed. The plaintiff here claims no error in the instructions given. It does not appear that plaintiff requested more specific instructions as to these matters. The rule is: "In order to present for review the failure of the trial court to instruct the jury upon particular issues or evidence in a case, the party complaining must have requested instructions on the omitted topics." Carter White Lead Co. v. Kinlin, 47 Neb. 409, 66 N. W. 536. Under these circumstances we see no merit in the assignment.

Plaintiff's next assignment of error is that the trial court erred in submitting the issue of contributory negligence to the jury, contending that there is no evidence of any negligence of the deceased.

Before further stating the evidence, reference should be made to the pleadings and the positions taken by the parties in this litigation. Plaintiff alleged as one of the grounds of negligence that the defendant permitted matches to be in the jail. The trial court submitted it to the jury as one of the grounds of negligence. Plaintiff makes no assignment of error as to that. Defendant denied generally and alleged that when the deceased was confined to the jail he had on his person cigarettes and

matches which he (deceased) retained. In its instructions the trial court advised the jury of that allegation. Plaintiff makes no assignment of error as to that. By reply plaintiff denied all allegations except those which specifically admitted to be true statements and allegations of the plaintiff's petition.

It is the rule that "When * * * a general denial is interposed to a pleading, coupled with and followed by admissions, the denial yields to the admissions to the extent thereof." Carson v. Hunt, 113 Neb. 727, 204 N. W. 813. See, also, Norton v. Bankers Fire Ins. Co., 115 Neb. 490, 213 N. W. 515; Bosteder v. Duling, 115 Neb. 557, 213 N. W. 809.

Under this rule it must be held as established by the pleadings that there were matches upon the person of the deceased when he was confined in the jail.

On her first appeal here plaintiff asserted by way of argument that "We believe that the fair inferences from the facts are that the deceased pulled out the four small mattresses from the bunks in the jail, put them in the southeast corner of the bull pen, laid down on them with a lighted cigarette that set fire to the edge of the mattresses and the mattresses smoldered there until all of the oxygen in the room was gone and both of the men suffoocated (sic) to death therefrom. The deceased man's body evidently was burned after his death because there was no evidence of a struggle whatsoever."

By brief in this case and in argument on the first assignment as to due care, plaintiff asserts as a fact that the defendant knew the two men in the jail had matches and tobacco. Later in the brief plaintiff asserts that the defendant admitted that both men had matches on them. Although plaintiff alleged by amendment to her petition that she did not know the origin of the fire nor fully know why the catastrophe happened, still it is apparent that from the beginning plaintiff presented this case on the theory that the fire was caused by matches used either by the deceased or by Summers, the other man

in the jail, and in this connection she alleged that the defendant permitted Summers to use the matches. We find no evidence as to use of matches in the jail by Summers.

The rule is that this court will dispose of a case on appeal on the theory on which it was presented to the trial court. Parker v. Knights Templars & Masons Life Indemnity Co., 70 Neb. 268, 97 N. W. 281; U. S. Tire Dealers Mutual Corporation v. Laune, 139 Neb. 26, 296 N. W. 333; Bohmont v. Moore, 141 Neb. 91, 2 N. W. 2d 599; Gillan v. Equitable Life Assurance Society, 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496.

We now go to the record to determine whether or not it contains evidence of a fact or facts from which negligence of the deceased could have been properly inferred by the jury.

The evidence of plaintiff shows that deceased and one Summers had been drinking beer in a tavern àt Homer since 9 p. m. on the evening in question; that deceased became quarrelsome when he had been drinking; that the village marshal, who was plaintiff's witness, cautioned them on one or more occasions; that the conduct continued and about 10:30 p. m., the deceased had a fight with one Armour in which the tavern proprietor was knocked down as he attempted to intervene; and that the deceased and Summers were arrested about 10:30 p. m., and placed in the village jail. The marshal testified that deceased walked without help and without staggering to the jail. The marshal testified that in his opinion the deceased was not intoxicated.

The marshal then called the sheriff at the county seat and asked him to come to get the prisoners. The sheriff and his deputy did so, receiving the prisoners about midnight and taking them to the courthouse. There the sheriff turned on the thermostat of the steam system which heated the jail. The sheriff and his deputy talked with the prisoners until about 1:30 a. m. They had been friends since school days and the visit was friendly. The

sheriff testified that he knew the deceased had been drinking from his knowledge of his past actions, although he did not smell liquor on him and the deceased walked without difficulty. The sheriff testified that when the men were locked up they were in good condition and "practically sobered up" and "were sobered up."

There is undisputed evidence that deceased was a cigarette smoker, and that during the visit in the sheriff's office he had been smoking. On cross-examination plaintiff asked the sheriff, "But you knew that both of them had tobacco, cigarettes and matches?" The sheriff answered, "I presume they had tobacco, they were smoking." Neither of the prisoners was searched before being locked up. It does not appear that any possessions were taken from them.

The jail is fireproof, of cement and steel construction. The only inflammable material shown to have been in it at the time was a small wooden table, mattresses, and bedding on the bunks in the cells. The men were not locked in the cells but had access to all parts of the jail. At 7:30 a. m., the caretaker of the building smelled smoke. He went to the sheriff's office and detected the odor of cigarette smoke. He opened the jail and found it full of smoke, so much so that he could not see except near the floor. He entered and opened the windows. The room is 15 feet from north to south. He found Summers on the floor, dead, lying near the northeast corner of the jail, his head to the north. He was fully clothed, had bedding folded for a pillow, and was as though asleep. There was no indication of struggle and no evidence of fire, matches, or ashes about his body. The caretaker found deceased near the southeast corner of the jail, his head to the north. The mattresses had been taken from the bunks. The deceased was lying on the mattresses on his back, his outer clothing removed, his head to the north, and apparently he was in a sleeping position. The remains of mattresses and clothing were still smoldering so as to require

water to put them out. Deceased was badly burned where his body was exposed to the mattresses. The only evidence of fire, that is, ashes and burning material, was around, near, and under deceased. The nearest any of this material was to Summers was two feet. Plaintiff's evidence was that the cause of death was suffocation caused by the ignition of bed and clothing in a closed room.

This is a case where there is an absence of any ill will between the two men and an absence of any evidence of a struggle or other disturbance. It also is a case where the evidence shows an absence of the causes, save for matches, which common experience indicates ordinarily may cause a fire. The pleadings show that there were matches on the person of the deceased. There is evidence of his use of cigarettes and his possession of tobacco. It is common knowledge that matches exist to produce fire and are used to light cigarettes. All of the evidence of fire was in and around the deceased. In the absence of other evidence as to a cause, the evidence is ample to sustain a reasonable inference that the fire was caused by the use of matches on the part of the deceased, and sufficient to sustain a reasonable inference that the fire and resulting death arose as a result of want of care on the part of the deceased. See Miratsky v. Beseda, 139 Neb. 229, 297 N. W. 94.

In fact, plaintiff requested an instruction as follows: "You are instructed that there is a presumption, in the absence of evidence to the contrary, that the deceased, Judd Marion O'Dell, exercised due care and caution for his own safety, and, in considering the issue of negligence of the deceased, you should give the plaintiff the benefit of this presumption, until it is overthrown by a preponderance of the evidence." The rule is: "A party who requests a trial court to give instructions framed upon a certain theory can not be heard to complain that the court gave other instructions proceeding upon the same theory." Schrandt v. Young, 62 Neb. 254,

86 N. W. 1085. See, also, Longman v. Pope, 111 Neb. 838, 197 N. W. 955. It follows that there is no merit in the assignment.

The plaintiff's next assignment of error is that the trial court erred in refusing to give the instruction last above quoted. Although variously stated in our opinions, we think the more comprehensive statement of the application of the rule of presumption of due care is that given in the syllabus in Eggeling v. Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 228 N. W. 361, on rehearing, 119 Neb. 235, 231 N. W. 152, as follows: "The presumption of due care arising out of the natural instinct of self-preservation is not evidence, but a mere rule of law, and obtains only in the absence of direct or circumstantial evidence justifying reasonable inferences one way or another upon that subject; when such evidence is produced the presumption disappears and is not entitled to be considered." Having determined that there is evidence here justifying a reasonable inference of negligence on the part of the deceased, the presumption of due care disappeared and was not to be considered. Under the circumstances we see no merit in the assignment.

By his answer defendant alleged that on the evening before deceased's death, the deceased drank a quantity of intoxicating alcoholic liquor and became intoxicated, and that deceased was arrested by the marshal of Homer on charges of intoxication and assault. By another allegation defendant stated that deceased at all times retained consciousness and was aware of his actions, and that when deceased and Summers were locked in the jail they had practically sobered up and were no longer intoxicated to any great degree, but on the contrary were in full possession of all their faculties and fully able to care for their own persons. Defendant had testified on direct examination that the marshal had told him to come and get the two men because they had been fighting.

On cross-examination of defendant, plaintiff, as a part of a question, undertook to read from the answer the first allegation above recited. Objection was made that the answer should be offered in evidence. The trial court ruled that that was the best evidence. Plaintiff stated there were matters in the exhibit which impeached the testimony of the witness, and that plaintiff did not want to be bound by the entire answer.

On cross-examination defendant testified that the marshal had told him he had arrested the men for fighting. He then was asked if he had not in his answer sworn that the marshal had arrested them for intoxication. Objection was made and the trial court ruled that plaintiff might offer the whole answer. The answer was offered in evidence and no objection was made. Plaintiff then read to the jury the first allegation summarized above.

Defendant was further cross-examined and asked if the men were not both under the influence of intoxicating liquor when he received them. Defendant answered that they had been drinking; that he talked to them long enough so that they had regained some degree of consciousness and were aware of where they were; and that they had practically sobered up when they were locked up. In his words they were "sobered up and in good condition." Plaintiff then read to the jury the allegation of the answer second above summarized.

Plaintiff assigns as error the requirement that the answer be admitted in evidence as a condition to defendant's being cross-examined as to statements in it.

So far as the first allegation is concerned it is apparent that the plaintiff was trying to establish by it the fact that deceased was intoxicated when arrested by the marshal, and in effect to impeach her own witness, for he had testified that the deceased was not intoxicated.

As to the second allegation the defendant had testified on cross-examination to substantially the same facts as recited in his answer. In any event plaintiff got the

facts of the allegations of the answer to the jury. We see no prejudicial error in the matter.

The sheriff kept a prison calendar upon which he entered in his handwriting under columns so designated the name, residence, age, height, color of hair and eyes, and complexion of deceased, and under the heading of "Peculiarities," the word "Intoxication." The time of the entry on the calendar is not shown. The sheriff was asked on cross-examination to produce the above record and, having done so, plaintiff read to him the entries above recited, not as a question, but for the purpose of calling them to his attention. Defendant stated, let plaintiff put the record in evidence. Plaintiff first offered in evidence the entire page containing 38 other similar entries, and then that part in particular which referred to deceased. Asked to identify, plaintiff offered the two lines containing the entry as to deceased and Summers. Objection was made that it was not proper cross-examination. No ruling was made. Other questions were asked. The court advised plaintiff to make his offer and let objections be made and not to read from the exhibit until it had been received in evidence. Plaintiff offered the two lines from the exhibit in evidence. Defendant objected as not proper cross-examination and an effort to prove why the men were arrested. Plaintiff stated that the offer was for impeachment on the ground that the sheriff had testified to things which would indicate that the men were not intoxicated and yet had written the word "Intoxication" on the record. At that point in the trial the court adjourned until the following morning. Thereafter when court convened the plaintiff offered the entire page of the calendar in evidence. Objection was made that it was incompetent, irrelevant, immaterial, and not proper cross-examination. The objection was sustained.

Plaintiff assigns error in the refusal to admit the exhibit. We think it obvious that under the showing made the entire page of the calendar was not admis-

sible. Plaintiff argues that the evidence was admissible to show that the sheriff knew the men were intoxicated. His evidence shows that he knew that at one time during the evening the men were intoxicated. His evidence is that when the men were locked in the jail they had practically, if not entirely, sobered up from that intoxication. The sheriff was not asked as to when he made the entry. If contradictory of any testimony, it was of that of the plaintiff's witness, the marshal, who stated on direct examination that the deceased in his opinion was not intoxicated. It was cumulative of the sheriff's testimony and is subject to the rule that "The admission of cumulative evidence is ordinarily within the discretion of the trial court and its ruling thereon will not be held erroneous unless it clearly appears that such discretion has been abused." Horky v. Schroll, 148 Neb. 96, 26 N. W. 2d 396. Here the jury had the evidence from plaintiff's witness of the fact of the drinking of intoxicants and their effect on the deceased. It had the evidence of the defendant as to the condition of intoxication of the men during the hour and a half after they were taken into custody and particularly when locked up three hours after the last evidence of drinking of intoxicants is shown. We see no error in the ruling of the court.

As a specific ground of negligence plaintiff pleaded that the sheriff did not provide proper fire protection for the inmates of the jail and offered evidence which was received as a part of her case-in-chief that there were no fire extinguishers in the jail. Defendant pleaded that it was the general custom of all jailers to permit smoking by prisoners in the quarters in which they were confined. He testified that he had been a deputy sheriff and sheriff for over twelve years; that he had visited other jails and penal institutions in Nebraska and surrounding territory; that he was familiar with the general custom as to permitting smoking in penal institutions; and that the custom was never to deny

tobacco to a prisoner if he smoked. The defendant also testified that he was familiar with the custom of penal institutions with reference to whether or not fire extinguishers were permitted in jail quarters, and that they were not permitted. These answers were admitted over objection of the plaintiff as incompetent, irrelevant, immaterial, not tending to prove or disprove any issues in the case, and no proper foundation laid. Plaintiff assigns this as error, contending that the foundation did not show how general the custom was, what it covered, how long it had been a custom, and what the custom was in jails where no guard was furnished. These specific objections were not presented to the trial court nor developed in cross-examination for the purpose of laying a foundation for the objection.

The rule is stated as follows: The cardinal principle is that a general objection, if overruled, cannot avail the objector on appeal. The only modification of this broad rule is that if on the face of the evidence, in its relation to the rest of the case, there appears to be no purpose whatever for which it could be admissible, then a general objection, though overruled, will be deemed to have been sufficient. 1 Wigmore, Evidence (3d ed.), § 18, p. 332, et seq.

The reason for the rule is stated as follows: "When evidence is offered to which there is some objection, substantial justice requires that the objection be specified, so that the party offering the evidence can remove it, if possible; and let the case be tried on its merits. If it is objected that the question is leading, the form may be changed; if that the evidence is irrelevant, the relevancy may be shown; if that it is incompetent, the incompetency may be removed; if that it is immaterial, its materiality may be established; if to the order of introduction, it may be withdrawn and offered at another time—and thus appeals could often be saved, delays avoided, and substantial justice administered." Rush v. French, 1 Ariz. 99, 25 P. 816. "Certainly it is not

fair to allow such a general dragnet as 'incompetent, irrelevant, and immaterial' to be cast over every bit of evidence in the case which counsel would like to keep out, and then to permit counsel, upon careful analysis of the printed narrative of the trial, to formulate some specification of error not thought of at the time, and which, if seasonably called to the court's attention, might have been avoided or corrected." Sigafus v. Porter, 84 F. 430, reversed on other grounds, 179 U. S. 116, 21 S. Ct. 34, 45 L. Ed. 113. In Neal v. State, 104 Neb. 56, 175 N. W. 669, we approved the language last above quoted. See, also, Weatherford v. Union P. R. R. Co., 5 Neb. (Unoff.) 464, 98 N. W. 1089, reversed on other grounds, 74 Neb. 229, 104 N. W. 183.

Concededly an objection that no foundation has been laid is more specific than the three general objections of incompetent, irrelevant, and immaterial. We have determined that an objection that no foundation has been laid may not be sufficiently specific to present a matter for review here. See Abbott v. Chicago, B. & Q. R. R. Co., 88 Neb. 727, 130 N. W. 438.

In Aller v. State, 114 Neb. 59, 205 N. W. 939, objection was made to the introduction of certain exhibits on the ground, among others, that no sufficient foundation had been laid. We held the objection too indefinite to challenge the court's attention to the specific objection raised there, observing that had the particular point been made the foundation might have been more specifically laid and held that the court did not err in overruling the objection. This was followed in Lewis v. State, 115 Neb. 659, 214 N. W. 302. In Kennedy v. Woods, 131 Neb. 217, 267 N. W. 390, on an objection of no foundation laid, we held that if there was some particular respect in which the proof of foundation was lacking, the trial court's attention should have been specifically directed thereto by appropriate objection. See, also, State ex rel. Sorensen v. Kistler, 119 Neb. 89, 227 N. W. 319.

The general rule is that "* * * upon the issue of negligence or contributory negligence, evidence of the ordinary practice or of the uniform custom, if any, of persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently is generally competent evidence.". 38 Am. Jur., Negligence, § 317, p. 1015. See, also, Annotation, 137 A. L. R. 611; Tite v. Omaha Coliseum Corporation, 144 Neb. 22, 12 N. W. 2d 90, 149 A. L. R. 1164.

Accordingly we hold that the trial court did not err in the admission of the challenged evidence.

Defendant was asked on direct examination if he had ever found it necessary to assist prisoners to operate the ventilating windows. Objection was made that it was immaterial, not tending to prove or disprove any of the issues of the case. The objection was overruled. The question was answered, "No, I never have." He then was asked if it had been his experience that the prisoners were able to operate the windows themselves. He answered, "Yes." Inquiry was made as to his height and he stated that it was five feet, ten inches. Defendant further testified that he could operate the windows; that deceased was six feet, one inch; and that a man of that height could operate the windows. Plaintiff assigns the admission of this evidence over objection as error.

Plaintiff had alleged as negligence that the defendant did not provide proper ventilation in the jail. On cross-examination and partly by direct examination it was shown by plaintiff's witnesses that there was a wicket in the jail door leading into the corridor that could be pushed open from the inside; that the ventilating windows were easily opened; that "everybody" could open them; that there was no lock attached; that the catch and handle on the ventilators, when pushed up and pulled, opened the ventilators downward; and that a man five feet, eleven inches, could open them.

As we see the evidence objected to, it was merely

confirmatory of that already in evidence as a part of plaintiff's case. We see no error in the admission of the evidence.

This disposes of all errors assigned and discussed. Rule 8 a 2 (4) of this court.

The judgment of the trial court is affirmed.

AFFIRMED.

YEAGER, J., dissenting.

I respectfully dissent from the majority opinion. In dissenting it becomes necessary to direct particular attention to two startling fallacies of the majority opinion since these fallacies furnish in part if not in whole the premises from which flow the ultimate factual and legal conclusions of the opinion.

One of these involves the application of the legal theory that a case will be disposed of on appeal on the theory on which it was presented to the trial court by the parties.

The other involves the application of the rule that parties to an action will be bound by the admissions made in their pleadings.

I find no fault with either as a legal principle but I most emphatically insist that the application and manner of application made of them by the majority opinion completely fail of justification.

As to the first of the propositions mentioned the opinion correctly quotes the following from the brief of appellant filed in this court on an appeal from the judgment in the earlier trial: "We believe that the fair inferences from the facts are that the deceased pulled out the four small mattresses from the bunks in the jail, put them in the southeast corner of the bull pen, laid down on them with a lighted cigarette that set fire to the edge of the mattresses and the mattresses smoldered there until all of the oxygen in the room was gone and both of the men suffoocated (sic) to death therefrom. The deceased man's body evidently was burned after

his death because there was no evidence of a struggle whatsoever."

It is by the theory thus expressed in a brief on a former trial of this case that the majority opinion states the appellant is bound. This cannot be correct.

If it be conceded, and I do concede that this may be true in certain cases under certain circumstances, that a party on a second trial of a case is bound by his presentation on the first trial, that rule has no application here.

Before it may be said that a party is bound by the theory on which he has submitted his case to the trial court the theory must find support in his evidence or pleadings or both. For authority to sustain this proposition I need only to direct attention to the cases cited in the majority opinion.

I submit that this theory finds no support in the pleadings which were not changed from the first to the second trial. I submit also that a search of the evidence of plaintiff on the first trial and likewise on the second will disclose no evidence to sustain any such theory.

As pointed out in the majority opinion this is a quotation from argument in a brief. Regrettably then we have come to the point in this case where we are deciding issues on arguments contained in briefs rather than on the record as presented by an authenticated transcript and bill of exceptions.

The majority opinion correctly states that in her petition the plaintiff alleged that the sheriff permitted matches to be in the jail, also that the defendants generally denied the allegations of the petition and then alleged that when the deceased was confined to the jail he had on his person cigarettes and matches which he retained. It fails however to note that nowhere does the petition contain a direct allegation or one from which a reasonable inference may be drawn that plaintiff's decedent had matches. It fails also to note that on motion of defendants plaintiff was required to amend

her petition. By this amendment she did not directly or by reasonable implication admit that decedent had matches. It was after this amendment that the answer was filed.

After the answer was filed plaintiff filed a reply as follows:

"Comes now the plaintiff and for her reply to the answer of the defendants filed herein, denies each and every allegation in said answer contained, except those which specifically admit to be true statements and allegations of the plaintiff's petition.

"Wherefore, plaintiff renews the prayer of her petition."

It will be observed that by this reply the plaintiff denied all of the allegations of the answer except such as were admitted to be true but significantly not a single allegation was admitted.

The majority opinion on this state of the record says: "Under this rule it must be held as established by the pleadings that there were matches upon the person of the deceased when he was confined in the jail."

The rule referred to is the following: "When a general denial is interposed to a pleading, coupled with and followed by admissions, the denial yields to the admissions to the extent thereof." The cases supporting the rule are set forth in the majority opinion and neither with the rule nor the supporting decisions do I find any fault. Here there is a general denial plainly not coupled with nor followed by admissions.

The position taken in this respect by the majority is in my opinion indefensible in this instance. For the future, if it is to be adhered to as a precedent, it converts a reply which is in terms a general denial into an admission of the defensive allegations of an answer thus lifting from the shoulders of a defendant the burden of sustaining his position.

It is submitted that the following, beyond the subjects already discussed, fairly reflects the record before this

court, contains an analysis and presentation of the controlling legal principles, and sets forth the conclusions which should have been declared:·

The cause was tried to a jury. A verdict was returned in favor of defendants and judgment was entered on the verdict. A motion for new trial was filed which was overruled. From the judgment and the order overruling the motion for new trial the plaintiff has appealed.

·The cause was before this court previously and it is reported under the same title as here in 149 Neb. 261, 30 N. W. 2d 906. The question there was that of whether or not the district court erred in sustaining the motion of the defendants to dismiss the action on the ground that the evidence failed to sustain a· cause of action in favor of plaintiff and· against the defendants. It was the conclusion of this court that the district court did so err.

The brief of appellant contains eight assignments of error all of· which, in the light of the view taken of the record, require consideration. They are substantially as follows: (1) The court erred in· giving instruction No. 15; (2) the court erred in not following the plain mandate of this court remanding the case; (3) the court erred in giving ·instruction No. 10; (4) the court erred in refusing to give instruction No. 1 requested by the plaintiff; (5) the court erred ·in refusing to allow exhibit No. 14, the· prison calendar, to be received in evidence; (6) the court erred in permitting the sheriff to· testify as to customs in his own jail, or in other ·jails; without any proper foundation; (7) the court erred in not permitting· plaintiff's attorney ·to cross-examine the sheriff as to facts sworn· to in his answer and contradicted by his testimony; and (8) the court erred in overruling plaintiff's motion for a new trial.

The facts upon which a determination of the questions presented depends are substantially as follows:

On the night of December 20, 1943, at about 1:30 a. m., the plaintiff's decedent and Ted Summers, also deceased, were locked in the jail of Dakota County, Ne-

braska. Neither the sheriff nor anyone on his behalf remained in close proximity to the jail during the remainder of the night. The caretaker of the courthouse arrived about 7:15 a. m. and smelled smoke and on investigation found that the smoke was coming from the jail. He procured a key from the sheriff's office, opened the jail door, and found the jail filled with dense smoke. He also found the plaintiff's decedent lying on the floor of the jail dead.

The jail is in the courthouse which is of what is ordinarily termed fireproof construction. In the jail are two cell blocks, a passage separating the blocks, and what is referred to as a jail room. In the cells which were within the blocks there were beds or bunks on which were mattresses or sleeping pads and probably other bed clothing. The floor is concrete. There are two doors to the jail which are referred to as an inner and outer door. In the jail room are two glass windows hinged at the bottom and latched at the top. They open inward. The latches on the windows are about seven feet from the floor and were in reach of plaintiff's decedent and Ted Summers. There was no method of communication from the inside of the jail except through a wicket in the outside door.

On the night in question O'Dell and Summers had been arrested by the marshal at Homer, Nebraska, and turned over to the sheriff and his deputy for detention until the following morning when it appears that the marshal proposed to file a criminal complaint against them.

When O'Dell and Summers were placed in the jail they were given free range of the jail. Only the outer door was locked against them. The two windows referred to were probably closed and apparently the bed mattresses and the bed clothing were in their proper places. There is no evidence of instruction or information given as to the facilities within the jail. There is no evidence that O'Dell had any such previous information although the evidence is subject to an inference

that Summers did since it is stated that he had been lodged in the jail on two or three previous occasions.

There is no evidence that either O'Dell or Summers occupied beds in the cells. When found they were both on the floor outside the cells some distance apart. Summers was pillowed on the floor practically fully dressed. O'Dell had apparently removed his outer clothing and was lying in the burned and charred remains of the bedding which had been removed from the cell beds. There was no evidence of struggle on the part of either of the men. The windows in the jail were closed. The evidence indicates that the two men died from suffocation from a fire which burned bedding on which O'Dell reclined which was still smouldering when they were found.

There is no direct or tangible evidence as to what caused the fire. It ought to be said here that these were the only inmates of the jail. There is evidence that O'Dell was a habitual smoker of cigarettes and that he smoked in the sheriff's office before he was placed in the jail. There is none that he smoked after being placed in jail or that he took cigarettes or matches with him into the jail. Neither of the men was searched before he was confined.

It was on the facts, I think fairly reflected here, and the instructions of the court that the cause was submitted to a jury and on which the jury based its verdict.

As was pointed out in the former opinion of this court the action is grounded in negligence on the part of the sheriff the specifications of which are (1) that he failed to have a guard or custodian in charge of the jail, (2) that he failed to provide fire protection on the night in question, and (3) that he failed to provide proper ventilation for the jail which failure was responsible for the death of plaintiff's decedent.

The first claimed error is that instruction No. 15 was improper. By the instruction the jury was informed that the statutes of Nebraska do not require the sheriff

to maintain a constant guard over prisoners incarcerated in the county jail for the purpose of preventing them from harming themselves either deliberately or accidentally, also that the only provision of the statute with reference to the maintenance of a constant guard to county jails applies to a situation when the condition of the jail is such as requires a constant guard to prevent escape.

The first phase of the instruction correctly reflects the state of our statutes. Likewise does the second phase which doubtless refers to section 47-113, R. S. 1943. While it is not thought that the instruction is erroneous as a statement of law, yet in the light of an examination of all of the instructions it could reasonably be considered as misleading. This instruction places an emphasis upon the lack of duty on the part of the sheriff without at any point in the entire instructions giving the jury adequate information regarding either the statutory or common-law duties and obligations of the sheriff with regard to the management or control of the jail or his conduct with regard to persons confined therein.

The second assignment charges that the court erred in refusing to follow the mandate of the former opinion in this case. In that opinion the judgment was reversed and the cause remanded on the theory that there negligence of the sheriff was an issue which should have been submitted to a jury for determination, of course under proper instructions. In the opinion it was said:

"We think it was error for the trial court to refuse to submit to a jury the failure of the sheriff to provide a guard for the jail in its described condition and the proper inferences to be drawn from such failure."

It was also said:

"We also think it was error for the court to refuse to submit to a jury the question of the adequacy of ventilation under the circumstances and the failure to make

outside communication available and the proper infer-
ences to be drawn from these circumstances."

Again it was said:

"We think that the question of whether or not the
sheriff under the circumstances failed to respond to his
duty to the plaintiff's decedent, in the light of the po-
tential for danger of which he knew or in the ordinary
exercise of his faculties for observation and under-
standing should have known, was a question for deter-
mination by a jury."

There can be no doubt that these pronouncements
amounted to a mandate that the subjects mentioned
therein should be submitted to a jury for determination.
Beyond the recitals in instruction No. 1 which substan-
tially follow the allegations of the petition as to negli-
gence the jury was given no information as to the issues
tendered by the plaintiff. Therein and nowhere else
was it given adequate information regarding the com-
mon-law or statutory duty of the sheriff in the circum-
stances disclosed.

The quoted pronouncements relate to issues presented
and they could not have been intelligently or adequately
considered without information upon the law relating
thereto. The jury was entitled to appropriate instruc-
tions on these issues. This court said in Boice v. Palmer,
55 Neb. 389, 75 N. W. 849: "A party to an action is en-
titled to have the jury instructed with reference to his
theory of the case, when the pleadings present the theory
as an issue and it is supported by competent evidence."
This was quoted with approval in Landrum v. Roddy,
143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041.

In Stoffel v. Metcalfe Construction Co., 145 Neb. 450,
17 N. W. 2d 3, this rule, worded slightly different, was
followed. Further in this case it is made clear that to
satisfy the requirements of the rule the theory of liability
or non-liability must appear in the instructions.

On the question of whether or not the pronouncements
in the former opinion correctly reflected the legal prin-

ciples which should prevail attention is directed to Allen v. Cavin, 179 Okl. 460, 66 P. 2d 40. In the opinion there it was said: "It may be seen, therefore, that the weight of authority is that the statutory duty imposed upon the sheriff to keep his prisoners safely charges him with the duty of ordinary care to accord them decent treatment and to see that they do not come to harm by negligence." See, also, Dunn v. Swanson, 217 N. C. 279, 7 S. E. 2d 563; Ratliff v. Stanley, 224 Ky. 819, 7 S. W. 2d 230, 61 A. L. R. 566; Kusah v. McCorkle, 100 Wash. 318, 170 P. 1023, L. R. A. 1918C 1158; Eberhart v. Murphy, 110 Wash. 158, 188 P. 17, on rehearing, 113 Wash. 449, 194 P. 415; State of Indiana ex rel. Tyler v. Gobin, 94 F. 48; 57 C. J., Sheriffs and Constables, § 512, p. 899.

It should be held therefore that the failure to properly instruct on the issues in conformity with the former opinion was error prejudicial to the plaintiff.

By the third assignment it is contended that the court erred in giving instruction No. 10 by which the question of contributory negligence of plaintiff's decedent was submitted to the jury. The substantial contention in this connection is that there was no evidence showing contributory negligence on his part and none from which a reasonable inference could be drawn.

If there was no such evidence then of course it was error to give the instruction. In Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439, it was said: "This court has repeatedly said that, where contributory negligence is pleaded as a defense, but there is no evidence to support such defense, it is prejudicial error to submit such issue to a jury."

The alleged contributory negligence which was the occasion for the giving of the instruction was the charge that plaintiff's decedent lighted a cigarette or cigarettes which ignited the material burned in the jail and that by his act he and his fellow prisoner came to their death and further that he failed to open a window or the

windows, which if it had been done would have prevented the disaster.

As to the windows there is no evidence that he knew anything about them or their fastenings. From the position in which the bodies were found and the·location of O'Dell with relation to the fire it may be at least conjectured if not even reasonably inferred that suffocation took place without either of them having knowledge of danger. It appears that no evidence relating to the windows justified the giving of the instruction on contributory negligence.

The only evidence upon which to base a conclusion that O'Dell negligently caused the fire was that before being locked in the jail he had been smoking. There is no evidence that he entered the jail with a lighted cigarette or that he lighted one after entry. That he did light a cigarette and that it was his act that caused the fire may well be conjectured or considered a possibility or even a probability but as either a possibility or probability it is not supported by evidence necessary to say within the meaning of the decisions that this was a reasonable inference based on evidence, or an inference based on proved or conceded facts. Kilpatrick v. Richardson, 40 Neb. 478, 58 N. W. 932; Kearney Canal & Water Supply Co. v. Akeyson, 45 Neb. 635, 63 N. W. 921; Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412. Verdicts may not be allowed to rest upon conjecture, possibility, or unsupported probability. Zitnik v. Union P. R. R. Co., 91 Neb. 679, 136 N. W. 995; Painter v. Chicago, B. & Q. R. R. Co., 93 Neb. 419, 140 N. W. 787; Mischnick v. Iowa-Nebraska Light & Power Co., 125 Neb. 598, 251 N. W. 258; Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299; Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711; McCullough v. Omaha Coliseum Corporation, 144 Neb. 92, 12 N. W. 2d 639.

The conclusion reached is that the evidence did not justify the giving of instruction No. 10.

In the fourth assignment of error it is urged that the court erred in refusing to give instruction No. 1 requested by plaintiff. The requested instruction is as follows: "You are instructed that there is a presumption, in the absence of evidence to the contrary, that the deceased, Judd Marion O'Dell, exercised due care and caution for his own safety, and, in considering the issue of negligence of the deceased, you should give the plaintiff the benefit of this presumption, until it is overthrown by a preponderance of the evidence." The wording of this instruction was approved in Sorensen v. Selden-Breck Construction Co., 98 Neb. 689, 154 N. W. 222. It is true that it was stated in that opinion that such an instruction was unnecessary yet in approval the court said: "It is conceded that these instructions correctly state abstract propositions of law, but it is urged that, as stated, they are not applicable to the facts in this case, and were therefore misleading and prejudicial." If the declaration may not be regarded as precedent still it may be considered for its persuasive effect. See, also, Albrecht v. Morris, 91 Neb. 442, 136 N. W. 48.

In the light of the view taken that there was no evidence of contributory negligence the portion of the instruction dealing with the issue of negligence of the deceased was improper. Treated as a request for an instruction on the presumption of which the plaintiff was entitled to have the benefit and the request containing a correct statement of legal principle in that connection the plaintiff was entitled to a proper instruction in that respect. It was error for the court to refuse to so instruct.

The fifth and seventh assignments of error will be discussed together since the two relate to similar principles of law. The court refused to admit in evidence the prison calendar which among other things contained a notation made by the sheriff as to the reason for placing O'Dell in the jail. The notation contained substantially a statement that O'Dell was intoxicated. This

was in conflict with the testimony given by the sheriff on the trial with regard to the condition of O'Dell. The sheriff signed and acknowledged an answer which was filed in the case wherein he declared that O'Dell was intoxicated. This likewise was in conflict with his testimony given on the trial.

The condition of O'Dell had a material bearing upon the care and caution required of the sheriff in the imprisonment and detention of O'Dell. Therefore it was proper for plaintiff to have the conflicting statements of the sheriff before the jury for the purposes of impeachment or of testing his credibility as a witness. Thomas v. Poulson, 149 Neb. 44, 30 N. W. 2d 59.

It was error to refuse to admit into evidence the calendar and to refuse to allow cross-examination as to the answer. It so happens however that the error was not prejudicial since plaintiff got before the jury otherwise all that could have been obtained by admission of the exhibit in evidence or by cross-examination in regard to the answer.

The sixth assignment charges that the court erred in permitting the sheriff to testify as to the custom in the Dakota County jail and other jails with regard to allowance of smoking by prisoners and with regard to allowance of fire extinguishers in the jail.

The diligence required of the sheriff herein with regard to the safety of O'Dell is well stated in 38 Am. Jur., Negligence, § 29, p. 673, as follows: "The degree of diligence which one must observe in the performance of his common-law duty to use care to prevent injury to others is ordinary care or reasonable care."

It is recognized that within limitations evidence of ordinary practice or custom of persons in the performance under similar circumstances of acts like those alleged to have been done negligently may be competent as bearing upon the question of whether or not the person charged has used ordinary and reasonable care. 38 Am. Jur., Negligence, § 317, p. 1015.

It is also recognized, likewise within limitations, that evidence of custom is admissible to prove negligence as well as to disprove it. 38 Am. Jur., Negligence, § 317, p. 1015.

In this case however nothing appears in the record to justify the admission of evidence of custom. There is no contention that the sheriff should have provided a fire extinguisher within the jail. Also there is nothing beyond conjecture that the fire was started as a result of O'Dell or Summers taking smoking materials in or smoking within the jail. The evidence received as to custom could not be considered in aid of the defense of the sheriff against negligence on his part or of contributory negligence charged against plaintiff's decedent.

The last assignment of error is that the court erred in overruling the motion for a new trial. By the rulings on the other assignments the correctness of this contention has been made manifest.

The judgment of the district court should be reversed and the cause remanded for a new trial.

BOSLAUGH, J., concurs in this dissent.

MESSMORE, J., dissenting.

I concur in the dissent of Judge Yeager solely upon the ground that the record fails to disclose any competent evidence, or any reasonable inference that may be drawn therefrom, of contributory negligence on the part of plaintiff's decedent which caused or contributed to his death by suffocation while incarcerated in the Dakota County jail.

Submission of the issue of contributory negligence on the part of the plaintiff's decedent to the jury, under the circumstances, constituted prejudicial error.

The judgment should be reversed and the cause remanded for a new trial.