REDMAN INDUSTRIES, INC., A CORPORATION, APPELLANT, V. MORGAN DRIVE AWAY, INC., APPELLEE.

138 N. W. 2d 708

Filed December 3, 1965. No. 35985.

Luebs, Tracy & Huebner, for appellant.

Pilcher, Howard & Dustin, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

A windstorm destroyed plaintiff's mobile home and contents while defendant, a common carrier, was transporting it in interstate commerce. In this action for damages a jury returned a verdict for defendant. According to plaintiff, the verdict should be vacated because of insufficient evidence, erroneous rulings on admissibility of testimony, and denial of plaintiff's right to begin the argument to the jury.

Plaintiff framed its cause of action in the common law, which excepts an act of God from the causes of loss for which a common carrier is liable. The excep-

tion is qualified by the rule that concurrent negligence of the carrier must be excluded. See, 49 U. S. C. A., § 319; Missouri P. R. R. Co. v. Elmore & Stahl, 377 U. S. 134, 84 S. Ct. 1142, 12 L. Ed. 2d 194. Plaintiff focuses its contention of insufficient evidence on this exception.

The trip was to be made from Grand Island, Nebraska, to Butte, Montana, by truck with the mobile home in tow. The accident occurred near Buffalo, Wyoming, on November 20, 1962, at approximately 9:45 a.m.

The truck was under lease to defendant from Glen Gosnell, who was employed to operate it. This 1958 2-ton Chevrolet weighed 6,000 pounds and had a wheel base of 14 feet, 6 inches. The mobile home weighed 12,390 pounds and measured 50 to 55 feet by 10 feet.

The Chevrolet was modified to pull mobile homes in accordance with regulations of the Interstate Commerce Commission. The hitch included a ball, a coupler, and a welded locking mechanism. Had it broken while the truck was pulling the mobile home, two safety chains secured by a pin would have served to hold the alignment. The truck was fit for service.

Gosnell gave the only eyewitness account of the trip, which had been uneventful until his arrival at Casper, Wyoming, on November 19, 1962. During his overnight stay there he did not inquire what the weather was likely to be, although he had traveled this route many times. It is clear that a truck with a mobile home in tow should not be operated in a wind exceeding 25 miles per hour. Defendant had such a rule, and Gosnell knew it.

When Gosnell resumed the trip at sunrise in clear weather, the wind was under 25 miles per hour. As he drove along, it was not noticeable and the only forecast which he heard over the truck radio was one of snow in Montana. At Buffalo there was less wind, and it subsided as he continued north on U. S. Highway No. 87.

At the top of a hill about 12 miles from Buffalo, Gosnell hurriedly stopped and parked the equipment when he

sighted grass and dust in agitation. Fearing a blow which would take both truck and trailer, he alighted and unhooked the pin of the safety chains; but time was too short for him to disengage the hitch. He then crossed the road and crawled down in the ditch on the west side.

One gust lifted the equipment completely from the ground with a twist which broke the hitch. Another gust swept the trailer over an embankment and through a right-of-way fence. The chassis fell near the embankment, but pieces of the body flew a quarter of a mile. Estimating the velocity of the strongest gust at more than 100 miles per hour, Gosnell thought that releasing the safety chains had saved his truck from damage. After the accident the wind lessened, but it blew strong for an hour.

James C. Ward, a Wyoming Highway Patrol officer in the district since 1952, corroborated some of Gosnell's testimony. During this period the wind damaged only three trailers, and the threat caused him to close the highway to traffic less than twice a year.

Ward's first knowledge of unusual weather on November 20, 1962, was gained from the accident report to him at Buffalo. En route to the scene he first noticed windiness 3 miles from his destination; but farther on the condition was worse—so much so that danger to his automobile crossed his mind when he arrived 45 minutes after the accident. He described the aftermath, attributing the loss to the storm.

Data was obtained from two United States weather stations 158 miles apart, one at Casper and the other 2.5 miles south of the Sheridan post office. On November 20, 1962, at 5 a.m. strong winds generally were expected because of a high-low-pressure system. In its forecast at 6:15 a.m., Sheridan used the word "windy," but it omitted any warning of severe gales. Its hourly velocity readings in miles per hour between 5:57 and 9:56 a.m. indicated winds from 28 to 46 with gusts from 35 to 57.

The peak for 1963 was 66, and a record 84 was set in November 1949. Readings at Casper between 3:55 and 8:55 a.m. showed winds from 21 to 37 with gusts from 35 to 47.

The wind was probably a "shinook" blowing down the eastern slope of the Big Horn Mountains. Such winds, which are commonly known locally, vary from place to place on account of the exposures.

This record presents negligence as a question of fact. The testimony of Gosnell and Ward supports a finding that Gosnell was reasonably attentive to the state of the weather. Removal of the safety chains may not have been negligence. The break in the hitch, the breach in the fence, the rubble—all fortify the conclusion that Gosnell's decision in the emergency was not necessarily unreasonable.

Plaintiff attacks a ruling which permitted Gosnell to estimate the velocity of the strongest gust. To the question it interposed an objection that he had not been qualified as an expert and a general objection to foundation.

Overruling the objection was not error. Wind velocity is a subject upon which a nonexpert witness may testify. See, Kubicek v. Slezak, 119 Neb. 542, 230 N. W. 248, 69 A. L. R. 1166; 2 Jones, Evidence (5th Ed.), §§ 405, 411, pp. 754, 771. When the facts which form the basis of a conclusion cannot be exhibited adequately, an estimate made by a witness who observed them is competent evidence unless it is based on pure speculation. The sufficiency of observation is largely within the discretion of the trial court. Rickertsen v. Carskadon, 169 Neb. 744, 100 N. W. 2d 852.

The objection to foundation was insufficient. The overruling of a general objection to a question will not be disturbed on appeal unless the error was obvious. Sears v. Mid-City Motors, Inc., ante p. 100, 136 N. W. 2d 428. See, also, O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123.

The trial court rightly excluded testimony of plain-

tiff's expert that standards of care in the industry required Gosnell to check weather forecasts and not to tow a mobile home in a wind exceeding 25 miles per hour. Gosnell admitted the affirmative duty, but even his testimony was superfluous in view of the negative duty. He and his supervisor both testified to the company rule, and it stands uncontradicted. Exclusion of cumulative evidence is ordinarily discretionary. Klinginsmith v. Allen, 155 Neb. 674, 53 N. W. 2d 77.

Taking up the last contention, we think that the district court properly permitted defendant to open the argument. Section 25-1107 (6), R. R. S. 1943, provides in part: "In argument, the party required first to produce his evidence shall have the opening and conclusion." The pleadings were superseded by a written stipulation which substituted for a formal pretrial order, and causation alone remained in issue. Although at the commencement of the evidence plaintiff read part of the stipulation, which had eliminated all other issues, defendant retained the right to begin the argument. See J. I. Case Co. v. Hrubesky, 125 Neb. 588, 251 N. W. 169.

The record being free from prejudicial error, the judgment is affirmed.

AFFIRMED.